Neptune Club's Liquor License Case

550

Argued October 12, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Thomas I. Guerin,* Special Deputy Attorney General, with him *Charles J. Margiotti,* Attorney General, for appellant.

*A. J. Nydick,* with him *Matthew K. Stevens,* for appellee.

OPINION BY KELLER, P. J., January 29, 1937:

The Pennsylvania Liquor Control Board has appealed from the order of the Court of Quarter Sessions of Philadelphia County directing the issuance of a club liquor license to the Neptune Club.

By section 404 of the Pennsylvania Liquor Control Act, as amended July 18, 1935, P. L. 1246, it is provided that there shall be no appeal from the order of the court of quarter sessions, sustaining the refusal of the Liquor Control Board to issue a license or ordering the issuance of the license to the applicant. We have held—See *Revocation of Mark's License*, 115 Pa. Superior Ct. 256, 263, 176 A. 254; *Revocation of Wolf's License*, 115 Pa. Superior Ct. 514, 176 A. 260—that the action of the court of quarter sessions may be reviewed by this court on an appeal in the nature of a certiorari, to ascertain whether the court below exceeded its jurisdiction or abused its proper legal discretion; and that since the Act of April 18, 1919, P. L. 72, we may examine the evidence to test the right of the court to make the order complained of; not to weigh conflicting evidence, but to determine whether the order appealed from is supported by any evidence and whether the court or judge had jurisdiction in the matter. Our review of the order appealed from in this case is limited to the above matters.

Neptune Club, incorporated by the special Act of April 9, 1872, P. L. 1036, was the holder of a club liquor license for the year 1935. It applied to the Liquor Control Board for a renewal of that license. So far as the record before us shows, the club had not been formally notified by the board of objections to the renewal of the license, based upon violations by the licensee of any of the laws of the Commonwealth, or regulations of the board, relating to the manufacture, transportation, use, storage, importation, possession or sale of liquors, alcohol, etc., or the conduct of the

licensed establishment. Under section 409 (b) of the Act of July 18, 1935, which became effective on its final enactment, it is provided that unless such formal notification is given the applicant by the board of objections to the renewal of the license, or unless the applicant has, by his own act, become a person of ill repute, the license *shall be renewed,* when the applicant shall file with the board a new surety bond and pay the requisite application fee and license fee specified in the act. A notice to the applicant to appear for a hearing on his application does not constitute the formal notice of objections to the renewal of his license required by section 409(b) of the Act. Nevertheless, after a hearing at which evidence of alleged violation of the laws relating to the sale, etc. of intoxicating liquors by the club's agents or employees was given by enforcement officers of the board, without rebutting testimony on behalf of the applicant—possibly because it had not received notice that there were any objections to the renewal of the license —the board refused to renew the license. The club appealed to the court of quarter sessions.

There the matter was heard de novo by Judge FINLETTER, resulting in the order appealed from.

There can be no question that the court below, acting through Judge FINLETTER, had jurisdiction of the matter. The Act of Assembly specifically directs that appeals may be taken from the action of the Liquor Control Board refusing a license to the court of quarter sessions of the county where the club is located— in this case, Philadelphia County. The only question, then, for us to consider is whether there was *any* evidence to support the order of the court below, for we have no authority to weigh and decide upon conflicting evidence. If the order is supported by evidence, even though we might not have arrived at the same result, it is not subject to reversal.

The appellant relies largely on the changes in the Liquor Control Act made by the amendment of July 18, 1935 as respects the requirements for the issuance of licenses to clubs. By the original Act of November 29, 1933, Special Session, P. L. 15, a 'club' was defined to "mean any group of individuals associated together not for profit for legitimate purposes of mutual benefit, entertainment, fellowship or convenience which if incorporated, has been in continuous existence and operation for at least six months, and if unincorporated, for at least ten years, immediately preceding the date of its application for a license under this act, and which regularly occupies, as owner or lessee, a clubhouse."

Following the decision of this court in *Com. v. West Phila. Fidelio Mannerchor,* 115 Pa. Superior Ct. 241, 175 A. 434, that licensed clubs were not allowed to sell liquors on Sunday, the General Assembly passed the amendment of July 18, 1935, which by implication permits licensed clubs to sell liquors on Sunday, but imposes stricter requirements for the issuance of a club license. By the Act of 1935—(the changes are in italics)— a club is defined to "mean any *reputable* group of individuals associated together not for profit for legitimate purposes of mutual benefit, entertainment, fellowship or lawful convenience, *having some primary interest and activity to which the sale of liquor shall be only secondary* which, if incorporated, has been in continuous existence and operation for at least six months, and if unincorporated, for at least ten years, immediately preceding the date of its application for a license under this act, and which regularly occupies, as owner or lessee, a clubhouse or *quarters for the use of members. Continuous existence must be proven by satisfactory evidence. Any cessation of continuous activity shall be reason for refusal to grant the license. The club shall hold regular meetings, conduct*

*its business through officers regularly elected, admit members by written application, investigation and ballot, and charge and collect dues from elected members."* Section 402 of the amended act adds the following additional provisions: "Every club applicant shall file with, and as a part of, its application, a list of the names and addresses of its members, directors, officers, agents and employes, together with the dates of their admission, election or employment, and such other information with respect to its affairs as the board shall require. The board shall refuse to issue licenses to clubs when it appears that the operation of the licensed business would inure to the benefit of individual members, officers, agents or employes of the club, rather than to the benefit of the entire membership of the club."

It will be noted that no change whatever was made in the amending Act of 1935 as respects the proviso in the Act of 1933 that the club, "if incorporated, has been in continuous existence and operation for at least six months, and if unincorporated, for at least ten years, immediately preceding the date of its application for a license under this act." To this, the Act of 1935 adds, "Continuous existence must be proven by satisfactory evidence. Any cessation of continuous activity shall be reason for refusal to grant the license." We cannot accept the interpretation of appellant that 'continuous existence' and 'cessation of continuous activity', in this last mentioned sentence refer to the whole period of the applicant's corporate existence— in this case, going back to 1872. It is, rather, explanatory of the immediately prior sentence requiring the club, if incorporated, to have been in continuous existence and operation for at least six months immediately preceding the date of its application for a license, thus giving the incorporated club an advantage over one not incorporated, which must have been in continuous

existence and operation for at least ten years immediately preceding the date of its application for a license. The act is not concerned with periods of corporate inactivity in the distant past, so long as the charter was not forfeited or abandoned, provided it has been in continuous existence and operation for at least six months immediately preceding the date of its application for a license. That is the period of 'continuous existence' which it must prove by satisfactory evidence; and if there has been a cessation of continuous corporate activity during that period, or such cessation shall occur in the future, it shall be ground for refusal to issue, or renew, the license, respectively.

The Neptune Club was incorporated by special act of assembly before our present Constitution was adopted and before the general act for the incorporation and regulation of corporations, of April 29, 1874, P. L. 73, was passed, to carry out its provisions. No specific purpose is stated in the act of incorporation; it was not, then, necessary to do so. It evidently succeeded an unincorporated association of the same name, and the name indicates a non-business or non-commercial corporation. No capital stock was provided for, and it may fairly be held to have been incorporated not for profit. Its incorporation was lawful and the charter was granted long before the enactment of the statutes providing for the licensing of the sale of liquors, so that could not have been its primary purpose. Its lawful existence as a corporation was established, prior to its application for a renewal license, in quo warranto proceedings brought by the Attorney General to declare the forfeiture of its charter. See *Com. ex rel. v. Neptune Club,* 321 Pa. 574, 184 A. 542, where the opinion of the Supreme Court stated: "It appears that the interests of the members were social and political". It regularly occupies a clubhouse or quarters for the use of its members at 1516 Parrish

St., Philadelphia, which it leases from the Berean Building & Loan Association. While the corporate affairs have not been administered with a carefulness and precision to be recommended, we cannot say that the evidence fails to show a reasonable compliance with the requirements of a licensed club, as defined in the Act of 1935, or that the conduct of its *corporate* affairs was such as to warrant the board in refusing a *renewal* of the license. The distinction between the renewal of a license already issued and the original issuance of a license, as set forth in section 409(b) of the Act of 1935, supra, applies to clubs as well as other licensees.

As to alleged violations of the law, respecting the sale of liquors to non-members, there is evidence to support the following extracts from the opinion of the court below: "Some proof was also offered that liquor was sold to non-members. It is a fact however that the Club employs doormen who require membership cards to be presented by all visitors not personally known to the doorman to be members. On several occasions, four in number, agents of the Board were admitted. On one of these occasions the agent obtained entrance by deceiving the doorman. 'Q. You very cleverly opened your wallet and closed it quickly and walked in. A. That is correct. Q. And through this deception you were able to get in the very next night. A. The same way.' Of course this incident is entirely without weight against the applicant. On another occasion an agent found the doorman absent and walked in. And on another an agent was admitted by the doorman. On all of these visits an appearance of respectability was given by the agents being accompanied by their wives. We do not feel that the last two incidents indicate anything more than carelessness of the employee ...... It is suggested that it is a one-man club. This question was raised in 1934 and passed upon

favorably to the applicant. This was prior to the amended act. But even then (in 1934) such a club as is described by the phrase 'one-man club' could not be licensed. So that the decision was not obiter. But whatever it was then, it is plainly now a club for the benefit of all its members. It is however suggested that its liquor bill is so large as to indicate that the sale of liquor is the main reason for its existence. All clubs are permitted by the existing law to sell liquor to their members. The relation between the returns from liquor sales and returns from other sources cannot be the criterion. It may have no other source of income, and yet serve its general legitimate purposes. This club apparently spends much of its money on amusements and entertainments for which nothing is charged. The quantity of liquor sold is not given precisely in the proofs. It appears that in eight months the receipts for food and drink were $4700. This is not an extraordinary amount for a club of 500, and more, members. It averages an expenditure of about nine dollars per member during eight months."

As the court below had jurisdiction of the subject matter and there is some evidence to support the order appealed from, irrespective of whether we would arrive at the same conclusion, the appeal must be dismissed.

Appeal dismissed.