## Young Men's Republican Club of the 15th Ward Liquor License Case.

Argued October 20, 1936.

Before Keller, P. J., Cunningham, Baldrige, Stadt-feld, Parker, James and Rhodes, JJ.

488

*Thomas I. Guerin,* Special Deputy Attorney General, with him *Charles J. Margiotti,* Attorney General, for appellant.

*Charles W. Sweeney,* for appellee.

OPINION BY JAMES, J., February 26, 1937:

This is an appeal from an order and decree of the Court of Quarter Sessions of Philadelphia County sustaining an appeal from the refusal of the Pennsylvania Liquor Control Board to renew the club catering license of the Young Men's Republican Club of the 15th Ward for the year 1936 and directing issuance of the license.

In the granting or refusal of a license, the action of the court of quarter sessions may be reviewed by this court on appeal in the nature of a certiorari to ascertain whether the court below exceeded its jurisdiction or abused its proper legal discretion; and our review of the order appealed from is limited to an examination of the evidence to determine whether the order appealed from is supported by any evidence—not to weigh conflicting evidence—and whether the court had jurisdiction in the matter: *Neptune Club's Liquor License Case,* 124 Pa. Superior Ct. 549.

On January 23, 1913, the Young Men's· Republican Club of the 15th Ward of the City of Philadelphia was incorporated, as a corporation of the first class, and its purpose was to promote and disseminate principles of the Republican Party. At the time of its incorporation, it maintained headquarters at 528 North 18th

Street, Philadelphia, and continued at that location until 1919, when its clubhouse was damaged by fire. From that date until October 1933, when it leased its present location, 342 North Broad Street, Philadelphia, it was maintained at various other locations in the city. The club was granted a license in 1934, and the liquor board filed a petition in the court of quarter sessions to revoke the license, which petition was refused. In 1935 the liquor board refused to issue a renewal of the license, but upon appeal to the court of quarter sessions the order of the liquor board was reversed and the license was directed to be issued. We have above noted the result of the renewal application for the year 1936.

The club called on its behalf prior and present officers to show that it had been in continuous existence since its incorporation, although no records were produced prior to that of November 1933. Since January 1935 regular monthly meetings have been held, proper officers elected and all applications for membership submitted upon a form which requires the sponsorship of a member; and these applications are acted upon at regular meetings of the board of directors. In 1935 the dues were one dollar per year, but at the time of the hearing, three dollars per year, at which time the club had 462 members on its roll.

Section 2, article 1 of the Act of July 18, 1935, P. L. 1246—Pennsylvania Liquor Control Act—defines a club as follows: " 'Club' shall mean any reputable group of individuals associated together not for profit for legitimate purposes of mutual benefit, entertainment, fellowship or lawful convenience, having some primary interest and activity to which the sale of liquor shall be only secondary which, if incorporated, has been in continuous existence and operation for at least six months, and if unincorporated, for at least ten years, immediately preceding the date of its appli-

cation for a license under this act, and which regularly occupies, as owner or lessee, a clubhouse or quarters for the use of members. Continuous existence must be proven by satisfactory evidence. Any cessation of continuous activity shall be reason for refusal to grant the license. The club shall hold regular meetings, conduct its business through officers regularly elected, admit members by written application, investigation and ballot, and charge and collect dues from elected members."

No effort was made to establish, other than by the manner in which the club was conducted, that the individuals associated together were not a reputable group. Without attempting to detail the evidence, the record does establish that the club held regular meetings, conducted its business through officers regularly elected, admitted members by written application duly passed upon at a meeting of the board of directors, and charged and collected dues from its members. The testimony shows at some length by whom and the manner in which the club was conducted, the income derived from various sources, and the entertainment provided for the members and their guests. In discussing this testimony the court below said: "There was no material evidence offered to show that the Club was not being run for the mutual benefit of the members and not for profit. It is true that certain of the members profited by employment in the Club's entertainment program, but it cannot be said that the services rendered were not a usual part of the entertainment presented by the Club, or that the profits were for the benefit of any member or restricted group of members. As for the large percentage of income derived from the sale of liquor and food in comparison with that derived from dues, as applied to a club of this character, it is difficult to set

up a standard which would govern the question involved here."

Appellant further argues that the club has not proven its continuous existence by satisfactory evidence. The evidence does show, and is not disputed, that since November 1933, the club has taken on more active existence, and its right to a club license for the years 1934 and 1935 was sustained by the court of quarter sessions. The language of the Act of 1935, supra, providing: "Continuous existence must be proven by satisfactory evidence. Any cessation of continuous activity shall be reason for refusal to grant the license," has recently been interpreted in *Neptune Club's Liquor License Case,* supra, where President Judge KELLER said: "We cannot accept the interpretation of appellant that 'continuous existence' and 'cessation of continuous activity', in this last mentioned sentence refer to the whole period of the applicant's corporate existence—in this case, going back to 1872. It is, rather, explanatory of the immediately prior sentence requiring the club, if incorporated, to have been in continuous existence and operation for at least six months immediately preceding the date of its application for a license, thus giving the incorporated club an advantage over one not incorporated, which must have been in continuous existence and operation for at least ten years immediately preceding the date of its application for a license. The act is not concerned with periods of corporate inactivity in the distant past, so long as the charter was not forfeited or abandoned, provided it has been in continuous existence and operation for at least six months immediately preceding the date of its application for a license. That is the period of 'continuous existence' which it must prove by satisfactory evidence; and if there has been a cessation of continuous corporate activity during that period, or such cessation shall occur in the

future, it shall be ground for refusal to issue, or renew, the license, respectively." The evidence in this case established a continuous existence far beyond the statutory requirement.

Appellant earnestly argues that the proof was sufficient to establish violations of law by the applicant. In disposing of this evidence, the court below said: "The principal evidence before us here is the testimony of investigators for the Board who had been admitted to the Club premises on three occasions and were served with liquor on Sunday. John L. Duggan, an enforcement officer of the Liquor Control Board, testified that he had obtained a card from a master of ceremonies of a restaurant referring him to the master of ceremonies of the Young Men's Republican Club. With this card Duggan obtained admission to the Club by presenting the card to the doorkeeper. He gained admission twice by the same method on the following Sunday. On all three occasions he stated that he had paid the check presented to him at the conclusion of the evening. On a fourth occasion, Duggan was refused admission because he did not have a membership card. The purpose of the testimony was to show that non-members were accorded the privileges of the Club without prearrangement and therefore in violation of the regulations governing catering under the license. John Cahill, the master of ceremonies at the Club testified that he was advised in advance by the master of ceremonies at the restaurant who gave the card to Duggan to expect Duggan and his guests and that he himself had admitted Duggan to the Club on the first occasion. Cahill explained that this was a courtesy extended by himself. William J. Milligan, the Chairman of the Board of Directors of the Club testified that the orders of the authorities of the Club were to admit only members of the Club unless groups of two or more had made advance arrangements for their en-

tertainment. Had these orders been carried out, the Regulations of the Liquor Control Board would have been fulfilled in letter if not in spirit. It may be noted there was no evidence that the officers of the Club knew of the visits of non-members who had obtained admission by the informality of presenting a card to the master of ceremonies. It has been held that the illegal acts of an employee unknown to the employer are not grounds for revocation of a liquor license. *Pejnovic's License,* 22 D. & C. 665. We are, therefore, of the opinion that the license applied for should not be refused on this phase of the evidence. We are not in sympathy with the manner in which the facilities of the Club are extended to non-members in that it seems apparent the officers of the Club are lax in safeguarding the continuance of the privileges of a private club. With notice of these conditions, this should be fair warning to the authorities of the Club that such future laxity will result in the revocation of its license."

We feel free to say that had the court refused the license, its action would have been supported by evidence; yet we cannot say that its action in granting the license was not supported by some evidence. The bona fides of the purpose of the club and the honesty of its management were questions of fact for the court of quarter sessions, who saw and heard the witnesses. In granting the license, we find no abuse by the court of its proper legal discretion.

Appeal dismissed.