## Columbia Fire Company's License

*Justin D. Jirolanio* and *Carl Cassone,* for appellant.

*Daniel J. F. Flood,* Deputy Attorney General, for the Pennsylvania Liquor Control Board.

LAUB, J., January 30, 1939.—This matter comes before us on an appeal by the Columbia Fire Company No. 1, of Roseto, Pa., from the refusal of the Pennsylvania

Liquor Control Board for renewal of its club liquor license. The reasons for such refusal by the Pennsylvania Liquor Control Board are set forth in its letter to petitioner bearing date January 6, 1939. Said letter, inter alia, states: ". . . your application for renewal of club liquor license was refused for the following specific reasons: (1) Of the 582 members of the club 531 have no voice in the management or any vote regarding the operation of the club; (2) the greater proportion of members is receiving no benefits from the operations of the club."

At the time of the hearing before us it was agreed by counsel for petitioner and the Deputy Attorney General appearing for said board that petitioner is a volunteer fire company incorporated in 1910 by decree of the court of common pleas of our county; that its bylaws provide for two classes of members, an active group composed of 50 members and the fire chief, whose duty it is to fight fires in the Borough of Roseto, or a total number of 51 members, and social members to the number of 537 who pay the same dues as the active members and have the same rights in and to the premises and social quarters as the active members, except that they have no vote in the affairs of the club or licensed premises and may speak at meetings only upon the permission of the president, this being in accordance with the bylaws.

The Deputy Attorney General agreed, as is shown by the transcript of the proceedings, that the club is a bona fide club and that the charter and reputation of the club and of its officers is good as far as the observance of the liquor laws of the Commonwealth is concerned.

From an examination of the Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15, it appears that the Pennsylvania Liquor Control Board established therein has the following power, section 202 setting forth:

"General Power to Make Regulations. — The board may, from time to time, make such regulations, not inconsistent with this act, as it may deem necessary for the efficient administration of this act. The board shall cause

such regulations to be published and disseminated through the Commonwealth in such manner as it shall deem necessary and advisable. Such regulations adopted by the board shall have the same force as if they formed a part of this act."

The Pennsylvania Liquor Control Act, as amended by the Act of July 18, 1935, P. L. 1246, sets forth in section 202 thereof:

"The board may, from time to time, make such regulations, not inconsistent with this act, as it may deem necessary for the efficient administration of this act. The board shall cause such regulations to be published and disseminated through the Commonwealth in such manner as it shall deem necessary and advisable. Such regulations adopted by the board shall have the same force as if they formed a part of this act."

Section 203 sets forth the specific subjects on which the board may adopt regulations. By reference to the latter section we find nothing therein which authorizes said Liquor Control Board to in any way establish regulations or rules which would tend to interfere with the internal government of corporations. Hence, the letter of January 6, 1939, is an attempt to promulgate a rule or regulation for which no authority is given in the act of assembly, and which rule or regulation has not been published and disseminated through the Commonwealth in any manner whatsoever. There was no such offer by the Commonwealth to show such fact.

The Pennsylvania Liquor Control Act, further amended by the Act of June 16, 1937, P. L. 1762, substantially reënacts the portion of the Act of 1935 above referred to. Referring to section 203 of the last-mentioned act, we find nothing therein which permits the Liquor Control Board to make regulations regarding the internal government of any corporations.

It might be said that because petitioner was incorporated in 1910 it is not within the protection of the Nonprofit Corporation Law of May 5, 1933, P. L. 289.

Section 601 of the last-mentioned act provides: 'Membership in all nonprofit corporations shall be of such classes, and shall be governed by such rules of admission, retention, suspension and expulsion, as the articles or by-laws shall prescribe".

The bylaws of petitioner permit two classes of members, to wit, active and social. However, section 3 of said Nonprofit Corporation Law, supra, expressly provides that its provisions shall govern all corporations heretofore incorporated in this Commonwealth. Therefore petitioner has the benefit of section 601 of the Nonprofit Corporation Law and can legally, in its bylaws, make the two classes of members aforesaid.

Under the aforesaid Pennsylvania Liquor Control Act of July 18, 1935, P. L. 1246, the Superior Court held that under section 409 (b) of the Pennsylvania Liquor Control Act of July 18, 1935, P. L. 1246, unless formal notification is given the applicant by the board of objections to the renewal of the license, based upon violations by the licensee of any of the liquor laws of the Commonwealth, or regulations of the board, or unless the applicant has, by his own act, become a person of ill repute, the license must be renewed, when the applicant files a new surety bond and pays the required fees: Neptune Club's Liquor License Case, 124 Pa. Superior Ct. 549; De Lucca's Liquor License Case, 124 Pa. Superior Ct. 500.

By referring to the letter of the Liquor Control Board bearing the date January 6, 1939, it will be noticed that there are no objections set forth therein to the renewal of petitioner's license, which objections are based upon violations by petitioner of any of the liquor laws of the Commonwealth or regulations of the board.

The Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15, and the Pennsylvania Liquor Control Act of July 18, 1935, P. L. 1246, are an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace, and morals of the people.

The provisions of the Acts of 1933 and 1935 must be liberally construed for the accomplishment of this purpose: Tracy's Liquor License Case, 124 Pa. Superior Ct. 511.

It therefore follows that the aforesaid Liquor Control Act of 1937 must be considered and construed similarly.

The attempt of the Pennsylvania Liquor Control Board to force petitioner to amend its bylaws and thus interfere with its internal affairs and government is similar in theory and analogy to the case of Cummings v. Pennsylvania R. R. Co., 301 Pa. 39, wherein it was held it was not for a jury to decide whether in their judgment due care required a railroad to maintain a flagman or safety gates at its crossing, or whether that or some other precaution would be a suitable mode of giving notice of the approach of a train, but that it is within the discretion of the directors of a railroad company in the first place whether a flagman or safety gates shall be placed at crossings.

Section 404 of the Pennsylvania Liquor Control Act of 1933 does not set up the courts of quarter sessions as an independent licensing authority, but merely provides an appeal to prevent arbitrary or unreasonable exercise of power or abuse of discretion by the Liquor Control Board: Shindor's Appeal, 19 D. & C. 596.

In the instant case the complaint of the Liquor Control Board is one to be remedied by the legislature and not by it or the courts. We therefore conclude that the letter of January 6, 1939, written by the Pennsylvania Liquor Control Board to petitioner is an arbitrary and unreasonable exercise of power not authorized by the Liquor Control Acts aforesaid.

And now, January 30, 1939, the appeal is sustained and the Pennsylvania Liquor Control Board is ordered and directed to issue a renewal of the club liquor license to petitioner, upon compliance of petitioner with the statutory requirements. Petitioner is directed to pay the costs of this proceeding.