## Genovese Appeal

586

*Joseph Alessandroni*, for appellant.

*Albert J. Persichetti*, for City of Philadelphia.

GOLD, J., April 8, 1959.—Appellant is the owner and operator of a dance studio located at 1709 Chestnut Street, Philadelphia. Upon recommendation of the police department appellant's license was revoked by the Department of Licenses and Inspections (the department). In addition, appellant's application for a license to operate a second studio at the southwest corner of Broad Street and Erie Avenue, Philadelphia, was disapproved. Appellant thereupon took separate appeals to the Philadelphia Board of License and Inspection Review (the board). After a hearing held on October 29, 1956, the board affirmed the action of the department. An appeal to this court followed. By opinion dated February 14, 1958, this court, speaking through Judge Levinthal, resubmitted the matter to the board for reasons hereinafter set forth. Subsequently the board held another hearing, after which it reaffirmed its former orders. This appeal followed.

Appellant is a 51-year-old married woman with six children. With the exception of some six or seven months she has continuously been engaged in the operation of licensed dance studios since 1944. In 1950, while operating a studio on Walnut Street, appellant and several of her dancing instructresses were arrested on various morals charges and appellant's license was revoked. Appellant and her instructresses were subsequently acquitted of these charges.

Thereafter, she opened a studio in Camden, N. J. This establishment, while operated for appellant by

another person, was closed in May 1953, on the recommendation of the Camden police department, which secured from her employes certain statements which indicated that the studio was operated in an irregular and possibly immoral fashion. The evidence did not disclose conclusively whether appellant voluntarily relinquished her Camden license or whether it was revoked. In any event, no arrests were made in that jurisdiction.

Appellant resumed her business in Philadelphia by opening a dance studio in March 1953, at 1227 Locust Street. She was issued a license for this establishment following an investigation by the police department which apparently found her qualified to continue in this type of business. On April 22, 1954, following another investigation by the police department, she was issued a license to conduct her present dance studio at 1709 Chestnut Street. She continued this operation until and after an incident allegedly occurred on July 25, 1956, which led to appellant's present difficulties.

Detective Leonard Weiner testified that on that date, while posing as a customer at appellant's studio, he was solicited by a dancing instructress, employed by appellant, to engage in an immoral act for $10. Appellant was not present on this occasion, although she was subsequently called from her home and placed under arrest along with the instructress. The detective testified that although no written statement was procured from the instructress, she admitted orally that she had committed immoral acts with other men on previous occasions. In her verbal statement the instructress not only exculpated appellant from any blame for the illegal solicitation, but on the contrary, stated that appellant had cautioned her and other employes against such behavior. Appellant was discharged by the magistrate the next morning.

Appellant testified that the only previous arrest of herself or any of her employes occurred in 1950 when the parties were subsequently acquitted, that her procedure was to investigate employes before hiring them and to warn them against improper conduct, that the accused instructress had previously operated her own studio and was an experienced dancing teacher who submitted excellent character references, further, that her background was investigated by appellant which indicated that she was married to an ex-serviceman, had one child and supported her mother and brother. The instructress was placed by appellant in "charge of the desk" and paid on a salary rather than a commission basis.

Appellant further testified that she intended to teach tap, toe, ballet and ballroom dancing at the Broad and Erie studio.

On the basis of the foregoing, the board in its first order found that the instructress did in fact solicit the detective, that although appellant may have been without personal knowledge thereof, she was responsible under the law for the acts of her employes.

Appellant thereupon appealed to this court by a writ of certiorari. Following oral argument, we were advised by counsel for appellant that Detective Weiner, the solicited officer, had been discharged from the police force for accepting a bribe. We were further advised that the accused dancing instructress was found not guilty of Weiner's charges by Judge Griffiths.

Because of the significance of these subsequent events we did not decide the appeal on the merits but remanded the proceeding back to the board in order to give that agency an opportunity to hold a further hearing. Speaking through Judge Levinthal, we stated: "Since the detective's testimony was the only evidence of an 'indecent act' or 'immoral conduct' on the premises warranting the revocation of appellant's license,

newly discovered matters raising serious questions concerning the credibility of this witness obviously might well affect the Board's ultimate decision": In the Matter of Irene Genovese, C. P. No. 6, December term, 1956, no. 8900, filed on February 14, 1958.

On March 31, 1958, the board held another hearing at which time counsel for the department conceded that Detective Weiner had been suspended from the police force and was listed to be tried before the Civil Service Commission. Two additional witnesses were called, however, to corroborate Weiner's testimony. Police Lieutenant Andrew Waters testified that the accused instructress, in the presence of Weiner, orally admitted under questioning that Weiner's charges were true. Detective Earl Hulihan, who also testified at the original hearing, fully corroborated Lieutenant Waters' testimony. Both officers declared that on subsequent visits to appellant's studio, no evidence of any irregular or illegal conduct was found.

In an opinion dated June 4, 1958, the board held that appellant failed to introduce any evidence to substantiate her charges concerning Weiner's dismissal or the acquittal of the instructress. Accordingly, the board reaffirmed its original order. The present appeal followed. However, at the time of the reargument before us, these facts were conceded by counsel for the board.

Statutory authority for the regulation and licensing of dance halls in Philadelphia stems from the Act of May 16, 1919, P. L. 193, 53 PS §4731, et seq. Section 4 of the act requires that a license be first obtained before any premises are used for classes or instruction in dancing. Section 5 requires the Mayor, now the department, to investigate all applications for dance hall licenses in order to determine whether or not the proposed premises comply with applicable rules, regulations, ordinances and laws. Section 7, 53 PS §4737, upon which the present action rests, provides, inter

alia: "The license of any public dance hall or ball room or academy may be forfeited or revoked by the . . . [Department] for disorderly or *immoral conduct on the premises,* or upon proof that the *dance hall,* ball room, or academy *was frequented by disorderly or immoral persons* . . ." (Italics supplied.)

Undoubtedly, the city in the exercise of its police powers conferred by the act has power to regulate dance halls. Statutes and ordinances similar to the one under consideration have uniformly been upheld as a valid measure for the protection of the welfare and morals of the community: Mehlos v. City of Milwaukee, 156 Wis. 591, 146 N. W. 882, 51 L. R. A. 1009 (1914); State v. Vanhook, 182 N. C. 831, 109 S. E. 65 (1921); United States ex rel. Russell v. District of Columbia, 271 Fed. 370, 50 App. D. C. 296 (1921).

Nevertheless, the maintenance of a dancing school is a lawful business: People of The State of New York ex rel. Duryea v. Wilber, 198 N. Y. 1, 90 N. E. 1140, 27 L. R. A. 357 (1910). The establishment of such a business, which may require a sizeable financial investment, necessarily encompasses valuable property rights which may not, and should not, be lightly disregarded.

We pause for a moment to discuss some of the principles of law, resort to which must be made in order to arrive at a legal and justifiable determination of this appeal.

The board acts in an appellate capacity and of necessity is a quasi-judicial body in which legal discretion is vested in the administration of its duties and functions. Its orders and decrees, when based upon substantial evidence with rational probative force, should be affirmed (Blumenschein v. Pittsburgh Housing Authority, 379 Pa. 566 (1955)), even though this court may have found differently; Pennsylvania Labor Relations Board v. Kaufmann Department Stores, Inc., 345 Pa.

398 (1942) ; Cage v. Public Service Commission, 125 Pa. Superior Ct. 330 (1937).

In Eways v. Reading Parking Authority, 385 Pa. 592 (1956), our Supreme Court indicated clearly that the orders of administrative tribunals involving acts of discretion, will not be reversed in the absence of bad faith, fraud, capricious action or abuse of power. We therefore turn again to the record before us to determine whether the board's action amounted either to a manifest abuse of discretion or a purely arbitrary execution of its duty or function.

We cannot take seriously the finding relied upon by the board that appellant was arrested for immoral acts in 1950 since she was acquitted of these charges. In the same dispassionate way, we view the Camden, N. J. incident of 1953 as having little or no probative value the only evidence relating to this episode being a letter from the police department of that city. We take this unequivocal attitude in view of the fact that appellant was granted a dance hall license in this city in 1954, which was renewed annually thereafter for several years, after a careful, thorough and exhaustive investigation by the police department of this city prior to the original issuance and subsequent annual renewal of such license.

We think that sufficient testimony was presented before the board to support its finding that an illegal solicitation occurred at appellant's studio. While it may be true that the instructress was found not guilty of this charge in a criminal trial, the board was not bound to concur in that result. Consequently, we are faced with this issue: Whether the board's reliance upon such a single act of immoral conduct on the licensed premises by one of her employes, without more, is sufficient to support its order. As we have previously stated, appellant was not present at the time of the illegal act; the illegal act was committed without the

knowledge or consent of appellant, against and contrary to express orders issued by appellant to the instructress and her other employes against such behavior.

Our careful research has revealed no authority, appellate or otherwise, interpreting the act, except the decision of the late Judge McDevitt in Claridge Café v. Kendrick, 5 D. & C. 281 (1924), where the court held that a dance hall license, being a permit and not a franchise, could be revoked by the Mayor in a proper case, and concluding that the Mayor's discretion could be reversed where he had exceeded his discretionary powers. Judge McDevitt added that since the quality or quantity of proof necessary to sustain the Mayor's revocation was not specified in the act, the court would assume that sufficient proof will be required and produced before revocation takes place. Judge McDevitt said, at page 282:

"The court cannot review the exercise of discretion by the Mayor in such a matter. The act requires that his revocation shall be based upon the proof that the dance-hall was frequented by disorderly or immoral persons, or that any of the rules, regulations, ordinances and laws applicable to such places have been violated. How much proof should be required is not specified. It is assumed that sufficient proof will be required before such action is taken, and the fact that it was an ex parte proceeding is immaterial."

It is with this pronouncement that we take issue, being convinced that the Mayor, now the department, must support its findings and orders by the type and quality of substantial evidence we have adverted to. We are aided and moved to our conclusion to reverse the board by resort to the rule of statutory construction, namely, that while statutes such as the present act must be construed to effect their objects and promote justice, there is also a presumption that the

legislature does not intend a result that is absurd, impossible of execution or unreasonable: Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 52, 46 PS §552. To force literal compliance with the act and make it mandatory that this license be revoked simply because one single and isolated instance of "improper conduct" took place on the premises of appellant, would be an instance of unreasonable judicial construction; otherwise, the licensee would be at the mercy of any person who might commit an indecent act, even though the licensee caused his arrest for such outrageous conduct.

To support our interpretation of section 7 of the act, we think that a fair analogy may be made with cases arising under the Pennsylvania Liquor Control Act. This act, similar to the one in question, provides for the revocation of a license upon a showing of acts of misconduct in the licensed premises. In Pejnovic's License, 22 D. & C. 665 (1934), it was held that where an employe of the licensee on one occasion sold liquor to two minors in the licensee's absence and without his consent and in the face of positive instructions to the contrary, revocation of the license would be improper. The court stated: "There is no evidence in this case by which the court, even applying the rule of the preponderance of the evidence . . . can find that this licensee either approved of or winked at the violation of the law by his agent . . .": Page 665. This holding was cited approvingly in Young Men's Republican Club of the 15th Ward Liquor License Case, 125 Pa. Superior Ct. 486 (1937), and Sternfeld's Appeal, 42 D. & C. 15 (1941).

In the latter case, the Pennsylvania Liquor Control Board revoked a liquor license on the following findings of fact: (a) The licensee furnished liquor to minors and intoxicated persons; and (b) the licensee permitted prostitutes to frequent the licensed prem-

ises and solicit therein. To support these findings, there was testimony from two young girls that they were served beer by the licensee's waitress on one occasion and testimony from three police officers that they were solicited by prostitutes on the premises with the knowledge of the licensee's bartender. The court held such evidence insufficient to sustain the revocation on the theory that the licensee had no knowledge of the unlawful act, the unlawful act was contrary to the licensee's instructions, the licensee was not present at the time of the occurrence of the unlawful act and that no proof was introduced that the unlawful act of the employe was repetitious. These circumstances are identical with those of the instant case.

In Easton's Liquor License Case, 142 Pa. Superior Ct. 49 (1940), it was held that a liquor license may be revoked for violations by employes of the licensee even though there is no direct evidence of his knowledge thereof. The court explained, however, that the violations in that case " 'were not *isolated and excusable transactions* but that they constituted a *regular course of conduct* on the part of those in charge of the premises. . . .' " The court further stated: " 'The owner of the business denied knowledge of such sales but his testimony was not at all points credible and, moreover, as the licensee, he was bound to know what was a *common occurrence* in his establishment' " : Page 51. (Italics supplied.)

We have carefully delineated the power of the board in the hope that this opinion will constitute a beacon light for further action of the board. With respect to the present case we are convinced that appellant is not only entitled to retain her license but is also entitled to her license for the additional studio at Broad and Erie Avenue, Philadelphia, if those premises are proper and qualified in all other respects.

Accordingly, we will enter the following

*Order*

And now, to wit, April 8, 1959, it is ordered that the appeal of Irene Genovese from the order of the Board of License and Inspection Review is sustained for the reasons assigned in the opinion filed herewith. The Department of Licenses and Inspections is hereby ordered to reinstate the dance hall license of Irene Genovese for premises 1709 Chestnut Street, Philadelphia. It is further ordered that the Department of Licenses and Inspections issue appellant a dance hall license for premises located at the southwest corner of Broad Street and Erie Avenue, Philadelphia, provided that such premises meet the standard requirements established by law.